## H. KOEHLER & CO. v. YORK MFG. CO.

(Circuit Court of Appeals, Second Circuit. January 29, 1912.)

No. 136.

1. SALES (§ 179*)—CONTRACTS—WAIVER.

A buyer of machinery, who accepts, retains, and uses the same, waives objections for delay in the delivery of the machinery and for defective workmanship as defenses to the seller's claim for the price, and is entitled only to the damages sustained in consequence thereof.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 456–468; Dec. Dig. § 179.*]

2. SALES (§ 418*)—MEASURE OF DAMAGES.

Where a contract of sale of a machine to make ice for sale by the buyer fixed the time for the completion of the machine, provided the buyer performed, within the time limited, agreements to be performed by him, and made time of the essence, the seller, wrongfully delaying delivery, was liable for the buyer's loss of profits during the delay, since ice was a staple article, and the profit lost was capable of reliable measurement.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1196; Dec. Dig. § 418.*]

3. SALES (§ 413*)—ACTION FOR PRICE—EVIDENCE—ADMISSIBILITY.

Where, in an action for the price of a machine to make ice for sale by the buyer, the buyer claimed damages for failure to deliver the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

machine on or about April 1st, as provided for in the contract, notice to the seller of the custom to contract in February or March for the annual output, and that the seller had actually contracted therefor, could not be proved, because not·pleaded, and because no application to amend was made.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1166–1169; Dec. Dig. § 413.*]

4. SALES (§§ 279, 285*)—CONTRACTS—WARRANTY.

A contract of sale of a machine, reciting that the seller guarantees workmanship and material for two years, and, in case any damage is caused by any parts of the machinery proving defective, the seller's liability is limited to the furnishing of a duplicate of the defective parts free of charge to the buyer, limits the liability of the seller as to defective parts to the duty of replacing the same free of charge, and implies that the buyer will give .him notice of the defects and an oppor-. tunity to replace the defective parts,.but there is no limitation of liability for defective workmanship.

[Ed. Note.—For other cases, see Sales, Dec. Dig. §§ 279, 285.*]

In Error to the Circuit Court of the United States for the Southern District of New York.

Action by the York Manufacturing Company against H. Koehler & Co. There was a judgment for plaintiff, and defendant brings error.. Reversed.

Arthur H. Masten, Benjamin F. Einstein, William M. Coleman, and Milton S. Guiterman, for plaintiff in error.

Hastings & Gleason and Henry W. Taft (Francis S. McGrath, of counsel), for defendant in error.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. This is a writ of error to a judgment for $15,000 and costs entered upon the verdict of a jury, directed by the court in favor of the plaintiff. The plaintiff contracted with the defendant to erect certain distilling, purifying, and freezing apparatus intended to use the defendant's exhaust steam for making ice. The price to be paid was $22,000, of which only $7,000 had been paid at the time suit was brought.

The plaintiff sued upon the contract, alleging, and undertaking to justify, as it was bound to do, a departure from the contract in two respects: First, that instead of six Bulloch motors it supplied six Westinghouse motors, with the consent of the defendant; second, by alleging that it was prevented from completing the contract until May 17, instead of April 1, 1909, as required by its terms, because of defendant's failure to furnish parts or appliances until March 15, instead of on or before January 15, 1909, as required by the contract.

The defendant in its answer admitted the first allegation, but denied the specific allegations in respect to delay. Then it set up three counterclaims: First, damages for profits lost upon ice which it would have manufactured during the period of delay for 47 days, and for lost profits upon the disposal of its whole output for the year, which it is customary for ice manufacturers in New York City to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

contract for in February or March; second, damages for profits lost on ice not made, due to the failure of the apparatus to freeze 67 tons a day as guaranteed; third, damages for loss of ammonia, due to defective workmanship upon and materials in the ammonia condensers and the cost of repairing the same.

[1] The defendant, by accepting, retaining, and using the machine, is held to have waived the foregoing objections as defenses to the plaintiff's claim, and to be entitled only to recover the damages which it has sustained therefrom.

[2] The material provisions of the contract in relation to the first counterclaim are:

The plaintiff "will have the machinery, apparatus, or plant ready for charging on or about the 1st day of April, 1909, provided the purchaser shall have performed within the time limited therefor all agreements by him to be kept and performed as set forth in the attached specifications. Time is the essence of this contract." The defendant was to make certain changes in the buildings, which were to be "completed and ready for the reception and installation of the herein-specified machinery, apparatus, or plant on or before the 15th day of January, 1909."

The trial judge said that it made no difference which party was to blame for the delay, because he was of opinion that the defendant under its counterclaim had shown no legally recoverable damages. Damages may be recovered because of failure to perform a contract which the parties must have known would naturally result from the breach. As the plant in question was furnished to make ice for sale, the plaintiff must be taken to know that, if it wrongfully delayed the delivery for 47 days, the defendant could during that period make no ice, and, ice being a staple article, the profit lost is capable of reliable measurement. We think the court should have left it to the jury to decide which party was responsible for the delay.

[3] Notice to the plaintiff of the alleged custom to contract for the annual output in February or March, or that the defendant had actually contracted therefor, not being pleaded, and no application to amend the complaint being made, the trial court rightly excluded consideration of such damages.

[4] The material provision of the contract as to the third counterclaim is:

The plaintiff "guarantees workmanship and material for two years, * * * and in case any damage be caused by any part or parts of the machinery, apparatus, or plant herein specified proving defective, the York Manufacturing Company's liability will be limited to the furnishing of a duplicate of such defective part or parts free of charge to the purchaser."

The plaintiff guaranteed both workmanship and materials for two years. In respect to defective parts of the machinery its liability was limited to the duty of replacing the same free of charge. This implied that it was to be notified and given an opportunity to do so. But there is no limitation for its liability for defective workmanship. We think the trial judge erred in holding that the plaintiff's liability was only to replace defective parts, and that, no notice having been given to it until after suit brought, there could be no recovery under

the counterclaim. He should have left it to the jury to say whether the loss of ammonia was due to defective parts or to defective workmanship, and whether the defendant was entitled to recover the expense of remedying the leaks.

As this case is to be tried again, it occurs to us to say that some expert testimony will be helpful for the correct understanding and application of the provision of the specifications that "the distilling system will be capable of condensing and purifying 67 tons of steam in 24 hours with water of 60 degrees, purchaser to use Croton water," and the provision in the contract itself "that the above ice-making apparatus will have a capacity when in full operation to make 67 tons of merchantable ice per day of 24 hours in midsummer when properly operated and run continuously."

The judgment is reversed.